**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

RAHUL SARAF, *individually and on behalf of all others similarly situated*,

                                         Plaintiff,

                    v.

EBIX, INC., ROBIN RAINA, and
STEVEN M. HAMIL,

                                         Defendants.

Case No.: 1:21-cv-01589 (JMF)

CLASS ACTION

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Paul J. Lockwood
Cliff C. Gardner
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Phone: (302) 651-3000

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Julie E. Cohen
One Manhattan West
New York, New York 10001
Phone: (212) 735-3000

*Attorneys for Defendants Ebix, Inc.,*
*Robin Raina and Steven M. Hamil*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... iii

PRELIMINARY STATEMENT ................................................................................1

BACKGROUND .......................................................................................................2

    A.    The Parties .................................................................................................2

    B.    Ebix Issues Its Third Quarter 2020 Form 10-Q ......................................3

    C.    RSM Fails To Complete The 2020 Audit .................................................5

    D.    K.G. Somani Gives A Clean Audit ..........................................................6

ARGUMENT .............................................................................................................7

I.     PLAINTIFF FAILS TO ALLEGE ANY ACTIONABLE FALSE OR MISLEADING STATEMENT UNDER SECTION 10(b) AND RULE 10b-5 .................8

    A.    Plaintiff Has Not Alleged With Particularity A Knowingly False Statement...................................................................................................8

    B.    Plaintiff Fails To Allege Any Defect In Ebix's Internal Controls ........................13

        1.    Plaintiff fails to plead internal control deficiencies. ..................................13

        2.    Plaintiff's laundry list of supposed evidence fails to allege with particularity an internal control deficiency. ................................................15

II.    PLAINTIFF FAILS TO ALLEGE FACTS SUPPORTING A STRONG INFERENCE OF SCIENTER .........................................................................16

    A.    Plaintiff Fails To Sufficiently Allege Motive Or Opportunity To Commit Fraud .....................................................................................................17

    B.    Plaintiff Fails To Sufficiently Allege Conscious Misbehavior Or Recklessness ............................................................................................18

        1.    CW allegations...........................................................................................19

        2.    Positions at the Company...........................................................................21

        3.    Growth in gift card business .....................................................................22

        4.    History of accounting................................................................................23

      5.    RSM's resignation and the retention of K.G. Somani ...............................24

III.    PLAINTIFF'S SECTION 20(a) CLAIMS SHOULD BE DISMISSED ..........................25

CONCLUSION...................................................................................................................................25

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Acito v. IMCERA Grp., Inc.*,
    47 F.3d 47 (2d Cir. 1995) ................................................................................................ 25

*C.D.T.S. v. UBS AG*,
    2013 WL 6576031 (S.D.N.Y. Dec. 13, 2013), *aff'd sub nom. Westchester
    Teamsters Pension Fund v. UBS AG*, 604 Fed. Appx. 5 (2d Cir. 2015) ..................... 11, 23

*Chapman v. Mueller Water Prods., Inc.*,
    466 F. Supp. 3d 382 (S.D.N.Y. 2020) ............................................................................ 12

*City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*,
    2011 WL 4357368 (S.D.N.Y. Sept. 19, 2011) ................................................................ 14

*City of N. Miami Beach Police Officers' & Firefighters' Ret. Plan v. Nat'l Gen. Holdings
    Corp.*,
    2021 WL 212337 (S.D.N.Y. Jan. 21, 2021) ........................................................ 17, 21, 23

*ECA & Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*,
    553 F.3d 187 (2d Cir. 2009) ..................................................................................... 7, 17, 18

*Fogel v. Vega*,
    759 F. App'x 18 (2d Cir. 2018) ....................................................................................... 8

*Friedman v. Endo Int'l PLC*,
    2018 WL 446189 (S.D.N.Y. Jan. 16, 2018) ................................................................... 12

*Hensley v. IEC Elecs. Corp.*,
    2014 WL 4473373 (S.D.N.Y. Sept. 11, 2014) ................................................................. 2

*Hutchinson v. Perez*,
    2013 WL 1775374 (S.D.N.Y. Apr. 25, 2013), *aff'd sub nom. Jones v. Perez*,
    550 F. App'x 24 (2d Cir. 2013) ....................................................................................... 19

*In re Am. Express Co. Sec. Litig.*,
    2008 WL 4501928 (S.D.N.Y. Sept. 26, 2008), *aff'd, Slayton v. Am. Express Co.*,
    604 F.3d 758 (2d Cir. 2010) ................................................................................. 19, 20, 21

*In re AmTrust Fin. Servs., Inc. Sec. Litig.*,
    2019 WL 4257110 (S.D.N.Y. Sept. 9, 2019) ................................................................. 12

*In re CIT Grp., Inc. Sec. Litig.*,
    349 F. Supp. 2d 685 (S.D.N.Y. 2004) ............................................................................ 13

iii

*In re Citigroup, Inc. Sec. Litig.*,
  330 F. Supp. 2d 367 (S.D.N.Y. 2004), *aff'd sub nom. Albert Fadem Tr. v.
  Citigroup, Inc.*, 165 F. App'x 928 (2d Cir. 2006)............................................. 13

*In re Diebold Nixdorf, Inc., Sec. Litig.*,
  2021 WL 1226627 (S.D.N.Y. Mar. 30, 2021) .......................................... 21, 22

*In re Express Scripts Holdings Co. Sec. Litig.*,
  773 F. App'x 9 (2d Cir. 2019) ...................................................................... 12

*In re Gen. Elec. Sec. Litig.*,
  844 F. App'x 385 (2d Cir. 2021) ............................................................ 18, 19

*In re Lululemon Sec. Litig.*,
  14 F. Supp. 3d 553 (S.D.N.Y. 2014), *aff'd*, 604 F. App'x 62 (2d Cir. 2015).............. 8, 19

*In re Magnum Hunter Res. Corp. Sec. Litig.*,
  26 F. Supp. 3d 278 (S.D.N.Y. 2014), *aff'd*, 616 F. App'x 442 (2d Cir. 2015)............ 8, 15

*In re Rockwell Med., Inc. Sec. Litig.*,
  2018 WL 1725553 (S.D.N.Y. Mar. 30, 2018) .................................... 21, 22, 23

*In re Wachovia Equity Sec. Litig.*,
  753 F. Supp. 2d 326 (S.D.N.Y. 2011).............................................................. 20

*Int'l Ass'n of Heat v. Int'l Bus. Machs. Corp.*,
  205 F. Supp. 3d 527 (S.D.N.Y. 2016).............................................................. 22

*Inter-Local Pension Fund GCC/IBT v. Gen. Elec. Co.*,
  445 F. App'x 368 (2d Cir. 2011) ................................................................... 22

*Janbay v. Canadian Solar, Inc.*,
  2012 WL 1080306 (S.D.N.Y. Mar. 30, 2012) ...................................... *passim*

*Kalnit v. Eichler*,
  264 F.3d 131 (2d Cir. 2001).................................................................... 17, 18

*Lachman v. Revlon, Inc.*,
  487 F. Supp. 3d 111 (E.D.N.Y. 2020) ...................................................... 12, 15

*Lefkowitz v. Synacor, Inc.*,
  2019 WL 4053956 (S.D.N.Y. Aug. 28, 2019), *aff'd*, *Shreiber v. Synacor, Inc.*,
  832 Fed. App'x 54 (2d Cir. 2020)................................................................... 16

*Leykin v. AT & T Corp.*,
  423 F. Supp. 2d 229 (S.D.N.Y. 2006), *aff'd*, 216 F. App'x 14 (2d Cir. 2007)................. 7

iv

*Local No. 38 Int'l Bhd. of Elec. Workers Pension Fund v. Am. Express Co.*,
  724 F. Supp. 2d 447 (S.D.N.Y. 2010), *aff'd*, 430 F. App'x 63 (2d Cir. 2011)..... 20, 21, 23

*Maloney v. Ollie's Bargain Outlet Holdings, Inc.*,
  2021 WL 517934 (S.D.N.Y. Feb. 10, 2021) .................................................................... 21

*Marcu v. Cheetah Mobile Inc.*,
  2020 WL 4016645 (S.D.N.Y. July 16, 2020) ....................................................... 7, 17, 18

*Menora Mivtachim Ins. Ltd. v. Int'l Flavors & Fragrances Inc.*,
  2021 WL 1199035 (S.D.N.Y. Mar. 30, 2021) ........................................................... 15, 18

*N. Collier Fire Control & Rescue Dist. Firefighter Pension Plan & Plymouth Cnty. Ret.
  Ass'n v. MDC Partners, Inc.*,
  2016 WL 5794774 (S.D.N.Y. Sept. 30, 2016) ........................................................... 13, 21

*Okla. Law Enforcement Ret. Sys. v. Telefonaktiebolaget LM Ericsson*,
  2020 WL 127546 (S.D.N.Y. Jan. 10, 2020)……………………………………………. 14

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
  575 U.S. 175 (2015)....................................................................................................... 9, 12

*Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of
  Commerce*,
  694 F. Supp. 2d 287 (S.D.N.Y. 2010).......................................................................... 16, 20

*Rombach v. Chang*,
  355 F.3d 164 (2d Cir. 2004)............................................................................................ 7, 8

*Ross v. Lloyds Banking Grp., PLC*,
  2013 WL 5273067 (2d Cir. 2013)...................................................................................... 25

*Schaffer v. Horizon Pharma PLC*,
  2018 WL 481883 (S.D.N.Y. Jan. 18, 2018) ...................................................................... 18

*Shemian v. Research in Motion Ltd.*,
  2013 WL 1285779 (S.D.N.Y. Mar. 29, 2013), *aff'd*, 570 F. App'x 32
  (2d Cir. 2014)..................................................................................................................... 22

*Shields v. Citytrust Bancorp, Inc.*,
  25 F.3d 1124 (2d Cir. 1994).............................................................................................. 7, 8

*Slayton v. Am. Express Co.*,
  604 F.3d 758 (2d Cir. 2010)........................................................................................... 7, 24

*Tabor v. Bodisen Biotech, Inc.*,
  579 F. Supp. 2d 438 (S.D.N.Y. 2008)................................................................................. 4

*Tellabs, Inc. v. Makor Issues & Rights, LTD.*,
    551 U.S. 308 (2007) ........................................................................................ 16

*Waterford Twp. Police & Fire Ret. Sys. v. Reg'l Mgmt. Corp.*,
    2016 WL 1261135 (S.D.N.Y. Mar. 30, 2016) ............................................... 11

*Woolgar v. Kingstone Cos., Inc.*,
    477 F. Supp. 3d 193 (S.D.N.Y. 2020) ..................................................... *passim*

*Wyche v. Advanced Drainage Sys., Inc.*,
    2017 WL 971805 (S.D.N.Y. Mar. 10, 2017), *aff'd*, 710 F. App'x 471
    (2d Cir. 2017) ................................................................................................ 20

## OTHER AUTHORITIES

15 U.S.C. § 78u-4(b)(1) ............................................................................................ 1

15 U.S.C. § 78u-4(b)(2)(A) ...................................................................................... 16


Federal Rules of Civil Procedure 9(b) ....................................................................... 1

Federal Rules of Civil Procedure 12(b)(6) ................................................................. 1

Defendants Ebix, Inc. ("Ebix" or the "Company"), Robin Raina and Steven M. Hamil (the "Individual Defendants," and together with Ebix, "Defendants") respectfully submit this memorandum of law in support of their motion pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b), and Section 21D(b)(1) of the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4(b)(1), to dismiss the Amended Class Action Complaint (the "Complaint" or "AC") (ECF No. 54) in its entirety with prejudice.

## PRELIMINARY STATEMENT

Based solely on events that occurred entirely within the fourth quarter of 2020, Plaintiff contends that Ebix's disclosures in the ***third quarter of 2020*** were knowingly false and misleading. Those disclosures were made on November 9, 2020. The Complaint was filed reflexively after the February 19, 2021 announcement that Ebix's auditor, RSM, had resigned due to "unusual transactions" that occurred during the ***fourth quarter of 2020***. Plaintiff's claims rest on the theory that two corporate officers "must have known" the Company's internal controls were insufficient, and lied about that fact when making the third quarter 2020 disclosures. Fatal, however, is the failure to allege with particularity that the challenged statements were actually false, known to be false when made, and made with an intent to deceive. The Complaint should be dismissed.

*First*, Rule 9(b) and the PSLRA require Plaintiff to plead particularized facts showing a knowingly false statement. Plaintiff's theory rests on RSM's resignation. But the challenged disclosures relate to the third quarter of 2020, which ended on September 30, 2020, and were made on November 9, 2020 when Ebix filed the 10-Q. RSM's resignation occurred ***more than three months later***, identified unusual transactions in the fourth quarter of 2020 and is silent with respect to the third quarter of 2020. The February 19, 2021 announcement of RSM's resignation does not

demonstrate that the Defendants knew of a material weakness related to the third quarter of 2020 when the challenged statements were made on November 9, 2020.

*Second*, Plaintiff fails to plead particularized facts showing that "there was, in fact, a material weakness in internal control over financial reporting." (AC ¶4; *see also* AC ¶¶122-23) Instead of just saying that, Plaintiff must allege "why or how" Ebix's internal controls were "materially deficient" at the time of the challenged disclosures. Plaintiff does not do so.

*Finally*, Plaintiff fails to plead a strong inference of scienter as to any Defendant. As to Defendant Hamil, Plaintiff alleges no motive. As to Defendant Raina, Plaintiff alleges that he lied in order to promote Ebix's stock price, maintain his compensation, and preserve the value of his stock. But such routine and conclusory allegations, absent a showing of a concrete benefit resulting from his alleged fraud, are insufficient. So are the Complaint's shopworn allegations that the Individual Defendants, due to their corporate positions, "must have" possessed information contrary to the disclosures. Statements from two "confidential witnesses" (the "CWs") that are not alleged to have any actual knowledge of a material weakness in internal controls, let alone what information was known to Defendants, do not substitute well-pled allegations of knowing falsity. The Complaint should be dismissed in its entirety with prejudice.

## BACKGROUND[1]

### A.    The Parties

Ebix is a Delaware corporation with its headquarters in Johns Creek, Georgia. (AC ¶¶2, 26) Ebix supplies infrastructure exchanges to the insurance, financial, travel, cash remittance, and

---

[1] The following facts are taken from the Amended Class Action Complaint; documents referenced therein; and documents of which the Court may take judicial notice, such as filings with the United States Securities and Exchange Commission (the "SEC"). *See Hensley v. IEC Elecs. Corp.*, 2014 WL 4473373, at *1 (S.D.N.Y. Sept. 11, 2014). The exhibits are attached to the contemporaneously filed declaration of Julie E. Cohen.

healthcare industries.  (AC ¶2)  Ebix's revenue and profits are primarily derived from its India-based EbixCash subsidiary, which primarily derives its revenue from the sales of prepaid gift cards and consideration paid by customers for financial transaction services.  (AC ¶¶35, 39)  Throughout 2019 and 2020, Ebix's revenue grew due to substantial growth in EbixCash's payment solutions offerings, primarily prepaid gift cards.  (AC ¶36)

Defendant Robin Raina is Ebix's Chief Executive Officer, and held that role during the Class Period.  (AC ¶27)  Defendant Steven Hamil is Ebix's Chief Financial Officer, and held that role during the Class Period.  (AC ¶33)

Lead Plaintiff Rahul Saraf ("Plaintiff") is a purported Ebix stockholder who allegedly purchased Ebix securities during the Class Period.  (AC ¶25)

### B.    Ebix Issues Its Third Quarter 2020 Form 10-Q

On November 9, 2020, the first day of the Class Period, Ebix filed its Quarterly Report on Form 10-Q for the period ended September 30, 2020 with the SEC (the "10-Q").  (AC ¶4)  Ebix stated, in relevant part:

> We monitor and evaluate on an ongoing basis our disclosure controls and procedures in order to improve their overall effectiveness.  In the course of these evaluations, ***we modify and refine our internal processes and controls as conditions warrant.***
>
> Our management, including our Chief Executive Officer and Chief Financial Officer, evaluated the effectiveness of our "disclosure controls and procedures" (as defined in Rule 13a-15(e) promulgated under the Exchange Act) as of September 30, 2020.  Based on this evaluation the Company's Chief Executive Officer and Chief Financial Officer have concluded that these disclosure controls and procedures are effective.  ***There were no changes in our internal control over financial reporting during the quarter ended September 30, 2020 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.  We have not experienced any material changes to our internal controls over financial reporting*** despite the fact that all non-essential employees are working remotely due to the COVID-19 pandemic.  We are continually monitoring the impact of COVID-19 on the operating effectiveness of our internal control over financial reporting.

(Ex. A, at 50 (emphasis added); *see also* AC ¶¶7, 120)

Plaintiff says that the bolded portions of the above-quoted language (and only those portions) of the 10-Q were "materially false and misleading when made and omitted the material fact that Ebix's existing internal control over financial reporting did, in fact, contain material weakness." (AC ¶¶11, 121; *see also* AC ¶¶14, 18-19, 37, 42-46, 48-52, 120-23)  These statements, and those challenged in the 10-Q certifications discussed below, are the "Challenged Statements."[2]

The 10-Q also contained signed certifications pursuant to Section 302 of the Sarbanes-Oxley Act of 2002 from both Robin Raina, as Ebix's CEO, and Steven Hamil, as Ebix's CFO. (AC ¶4)  As is customary, each officer certified that, based upon his knowledge, the 10-Q did not contain any untrue statements of material fact, and the 10-Q "fairly present[s] in all material respects the financial condition, results of operations and cash flows" of the Company.  (AC ¶¶8-9)  Plaintiff alleges that these statements were false and misleading because they "omitted the material fact that there was a material weakness in internal control over financial reporting in the gift card business in India at the time that Defendants signed their SOX Certifications." (AC ¶122)  Plaintiff also alleges that Defendants Raina and Hamil "falsely attested" that they had disclosed to Ebix's auditors and audit committee, "based on our most recent evaluation of internal control over financial reporting," "all significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information." (Ex. A, at Ex. 31.1, Ex. 31.2; AC ¶¶8-9, 14, 123)

---

[2]  Plaintiff's claims are defective because the "use of large block quotes from SEC filings and press releases, followed by generalized explanations of how the statements were false or misleading are not sufficient to satisfy the heightened pleading requirements." *See Tabor v. Bodisen Biotech, Inc.*, 579 F. Supp. 2d 438, 453 (S.D.N.Y. 2008).

### C.    RSM Fails To Complete The 2020 Audit

On February 15, 2021 – *more than three months after* Ebix issued the 10-Q containing the Challenged Statements – Ebix's independent auditor, RSM US LLP ("RSM"), informed the Company that it was resigning and would not complete Ebix's 2020 audit.  (AC ¶¶79, 82)  Ebix promptly disclosed this event.  On February 19, 2021, the last day of the Class Period, Ebix filed a Current Report on Form 8-K with the SEC, disclosing, in relevant part:

> On February 15, 2021, RSM told the Chairman of the Company's Audit Committee during a telephone call that RSM was resigning as the Company's independent registered public accounting firm, effective immediately. RSM then advised the Chairman on the call that it was resigning as a result of being unable, despite repeated inquiries, to obtain sufficient appropriate audit evidence that would allow it to evaluate the business purpose of significant unusual *transactions that occurred in the fourth quarter of 2020*, including whether such transactions have been properly accounted for and disclosed in the financial statements subject to the Audit. RSM informed the Chairman that the unusual transactions concerned the Company's gift card business in India….

> Promptly following the call between RSM and the Chairman of the Audit Committee, RSM sent the resignation letter dated February 15, 2021. RSM stated in its resignation letter that it was "resigning as a result of being unable, despite repeated inquiries, to obtain sufficient appropriate audit evidence that would allow it to evaluate the business purpose of significant unusual *transactions that occurred in the fourth quarter of 2020*, including whether such transactions have been properly accounted for and disclosed in the financial statements subject to the Audit." RSM informed the Company that the unusual transactions concerned the Company's gift card business in India. RSM also stated in its letter that it believed that the Company's "internal control over financial reporting was not effective *as of December 31, 2020* due to the identification of a material weakness….

(Ex. B, at 2 (emphases added); *see also* AC ¶115)  Ebix further explained that:

> While the Company does not agree with certain of the statements made by RSM in its resignation letter to the Audit Committee, the board has engaged outside counsel who, along with accounting experts, will assist the Company with respect to these matters. The Audit Committee is currently seeking a new independent registered public accounting firm and intends to engage such firm as soon as practicable. RSM has been authorized to respond fully to the inquiries of the successor independent registered accounting firm.

(Ex. B, at 2-3)

On February 23, 2021, Ebix filed an amended 8-K containing RSM's response to the

Company's February 19, 2021 disclosure, which stated in relevant part:

> In its disclosure, the Company states: "RSM *asserts* that on that call it further advised the Chairman that if this requested information was further investigated it might materially impact the fairness or reliability of the financial statements subject to the audit or affect RSMs willingness to be associated with the Company's financial statements, but that since RSM had resigned, no further investigation would occur." (emphasis supplied). RSM disagrees with the use of the term "asserts" to the extent it could create uncertainty as to what RSM communicated. In the call that occurred between RSM and the Chairman of the Company's Audit Committee on February 15, 2021, RSM stated clearly and unequivocally that if the information repeatedly requested by RSM — but which was not provided by the Company — related to gift cards issued by ItzCash/EbixCash **in the fourth quarter of 2020** was further investigated, it **might** materially impact the fairness or reliability of the financial statements subject to RSM's audit or affect RSM's willingness to be associated with the Company's financial statements, and that, as a result of RSM's resignation, **further investigation has not occurred**.

(Ex. C (emphasis added); *see also* AC ¶118)

### D.    K.G. Somani Gives A Clean Audit

As anticipated in the February 19, 2021 Form 8-K, the Company promptly engaged K.G.

Somani & Co. ("K.G. Somani") on March 5, 2021 to serve as the Company's new independent

auditor and to complete the 2020 audit.  (AC ¶99)  On April 27, 2021, K.G. Somani completed its

audit of Ebix's 2020 financial statements and provided Ebix with a clean, unqualified audit

opinion, which was disclosed in Ebix's Annual Report on Form 10-K.[3]  (Ex. D, at 104-05, 108;

AC ¶99)  In addition to K.G. Somani's unqualified audit opinion, Ebix also disclosed in the 2020

10-K that:

> As referenced in the Company's February 20, 2021 press release following RSM's resignation, the Board engaged counsel, Skadden, Arps, Slate, Meagher & Flom LLP to, along with accounting experts from the consulting firm, AlixPartners LLP, assist the Company with respect to matters raised by the former auditor's resignation. Having reviewed the work performed by AlixPartners and considered

---

[3]    The 10-K is referenced in the Complaint as "the 2020 10-K" and was filed on April 27, 2021 (for fiscal year 2020).

their observations, the Board is satisfied that no steps are necessary with respect to any gift card business issues raised by the former auditor in its resignation.

(Ex. D, at 105)

## ARGUMENT

Plaintiff fails to adequately allege that the Challenged Statements were false and misleading and the Complaint should be dismissed.  To state a claim under Section 10(b) and Rule 10b-5 that Defendants made material misrepresentations or omissions, Plaintiff must allege: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Marcu v. Cheetah Mobile Inc.*, 2020 WL 4016645, at *3 (S.D.N.Y. July 16, 2020) (Furman, J.) (citation omitted); *see also Leykin v. AT & T Corp.*, 423 F. Supp. 2d 229, 237-38 (S.D.N.Y. 2006), *aff'd*, 216 F. App'x 14 (2d Cir. 2007).  In addition, "[a] complaint alleging securities fraud must satisfy the heightened pleading requirements of the PSLRA and Federal Rule of Civil Procedure 9(b) by stating with particularity the circumstances constituting fraud." *Slayton v. Am. Express Co.*, 604 F.3d 758, 766 (2d Cir. 2010).  Plaintiff must allege "with particularity the specific facts in support of [their] belief that [defendants'] statements were false when made." *Rombach v. Chang*, 355 F.3d 164, 172 (2d Cir. 2004) (citation omitted).  To do so, "the complaint must 'specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading,' and 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *ECA & Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009) (citation omitted).  "[F]requent conclusory allegations—that Defendants 'knew but concealed' some things, or 'knew or were reckless in not knowing' other things—do not satisfy the requirements of Rule 9(b)." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d

1124, 1129 (2d Cir. 1994) (citation omitted).  The Complaint is full of these sorts of insufficient

allegations.[4]

## I.    PLAINTIFF FAILS TO ALLEGE ANY ACTIONABLE FALSE OR MISLEADING STATEMENT UNDER SECTION 10(b) AND RULE 10b-5

### A.    Plaintiff Has Not Alleged With Particularity A Knowingly False Statement

Plaintiff says that the Challenged Statements were false and misleading because "there

was, in fact, a material weakness" in Ebix's internal controls over the Company's financial

reporting related to the gift or prepaid card revenue transaction cycle at the time of the 10-Q.  (*See*

AC ¶¶4, 91, 121-22)  But no particularized fact allegation demonstrates this was true, or known to

be true, during the third quarter of 2020, which ended on September 30, 2020, or as of November

9, 2020 when Ebix filed the 10-Q.  This pleading defect is fatal.  For a statement to be actionable

under Section 10(b), "the statement must be false."  *Woolgar v. Kingstone Cos., Inc.*, 477 F. Supp.

3d 193, 218 (S.D.N.Y. 2020) (quoting *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 571

(S.D.N.Y. 2014)).  The Second Circuit has explained that plaintiffs must do more than simply

assert that a particular statement is "false and misleading; rather, they must demonstrate with

specificity why and how that is so."  *Rombach*, 355 F.3d at 174.[5]

The Supreme Court has similarly made clear that "a sincere statement of pure opinion is

---

[4]    (*See* AC ¶¶5, 15, 84, 86, 88, 98, 109, 122, 124, 141-43, 155 (Defendants "knew or recklessly disregarded"), ¶86 ("Defendants also knew and failed to disclose"), ¶122 ("Defendants failed to disclose what they knew or recklessly disregarded"), ¶¶6, 34 ("Defendants knew…and concealed"), ¶12 ("concealed by Defendants"), ¶13 ("Defendants concealed"), ¶153 (Defendants "engaged and participated in a continuous course of conduct to conceal adverse material information"),  ¶156 (disclosures "were done knowingly or recklessly and for the purpose and effect of concealing Ebix's financial condition"))

[5]    *See also Fogel v. Vega*, 759 F. App'x 18, 24 (2d Cir. 2018) (affirming dismissal of Section 10(b) claim where complaint "does not sufficiently allege the falsity of the statements"); *In re Magnum Hunter Res. Corp. Sec. Litig.*, 26 F. Supp. 3d 278, 290 (S.D.N.Y. 2014) ("without contemporaneous falsity, there can be no fraud"), *aff'd*, 616 F. App'x 442 (2d Cir. 2015).

not an 'untrue statement of material fact,' regardless whether an investor can ultimately prove the belief wrong," and that the securities laws "do[] not allow investors to second-guess inherently subjective and uncertain assessments." *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 186 (2015). Under *Omnicare*, a statement of opinion is actionable only if (1) "the speaker did not hold the belief she professed," (2) "the supporting fact[s] [the speaker] supplied were untrue," *id.*; or (3) the plaintiff identifies "particular (and material) facts going to the basis for the [speaker's] opinion - facts about the inquiry the [speaker] did or did not conduct or the knowledge it did or did not have - whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context." *Id.* at 194. Satisfying this standard "is no small task for an investor." *Id.* Plaintiff falls short.

RSM's resignation on February 15, 2021, contrary to Plaintiff's conclusory assertions, does not demonstrate that Ebix's internal controls were insufficient at the time of the Challenged Statements. (*See* AC ¶¶13, 15, 89, 122) In fact, the timing of RSM's resignation and its stated reasons entirely contradict Plaintiff's conclusory assertions. The Challenged Statements relate to the third quarter of 2020, which ended on September 30, 2020, and were made on November 9, 2020 when Ebix filed the 10-Q. RSM's resignation occurred ***more than three months later*** and is silent with respect to the third quarter of 2020. RSM's statement did not address deficiencies in the third quarter of 2020. Instead, RSM stated in February 2021 that it had identified "unusual transactions ***that occurred in the fourth quarter of 2020***" and believed internal controls were not effective ***as of December 31, 2020***. (AC ¶115)[6] Plaintiff thus fails to plead particularized facts showing the Challenged Statements were false, or that anyone knew they were false, when made.

---

[6]    For the same reason, Plaintiff's allegations that Defendants failed to disclose that "RSM had uncovered 'significant unusual transactions'" or that Ebix was "unwilling or unable to provide RSM with sufficient and appropriate audit evidence" to explain them also fail. (AC ¶86) RSM

*(cont'd)*

The pleading defects here are similar to those in *Woolgar v. Kingstone Companies, Inc.*, 477 F. Supp. 3d 193 (S.D.N.Y. 2020) and *Janbay v. Canadian Solar, Inc.*, 2012 WL 1080306 (S.D.N.Y. Mar. 30, 2012). In *Woolgar*, a stockholder alleged that a company's quarterly and annual reports, and related certifications, contained materially false statements related to the sufficiency of a company's internal controls, including that "there was 'no change'" in the company's internal control over financial reporting. *Id.* at 229. Those statements were made in reports filed between March 14, 2018 and April 29, 2019. *Id.* at 207. The Court dismissed the stockholder's claims because they rested on the company's "post-Class Period admission that there was a material weakness as of September 30, 2019." *Id.* at 229. It explained that the stockholder "failed to allege how Defendants' knowledge of a material weakness as of September 30, 2019 – as disclosed in November 2019 – demonstrates that any Defendant was aware of a weakness during the Class Period [of March 14, 2018-April 29, 2019]." *Id.* at 230.

In *Janbay*, plaintiffs alleged that a company's June 8, 2009 annual report for fiscal year 2008 falsely stated that the company had maintained effective internal controls as of December 31, 2008 because the company later disclosed on August 19, 2010 that its "system of accounting internal controls was materially flawed" and revised its unaudited financials for 4Q 2009. 2012 WL 1080306, at *8. The Court held that the fact that the company "revised some of its reported

---

disclosed its identification of unusual transactions that *occurred* during the fourth quarter of 2020, which necessarily means that Defendants could not have failed to disclose such information in connection with their statements related to the *third quarter* of 2020. Similarly, Plaintiff's assertion that RSM amended a portion of its 2019 audit opinion does not plead with particularity that the Challenged Statements were false, or known to be false when made. (*See* AC ¶¶106-108) First, reissuing the 2019 opinion does not show a material weakness in the third quarter of 2020. Indeed, RSM was careful to address 2019 and only the fourth quarter of 2020, according to Plaintiff. It is nonsensical to think that RSM's failure to identify any concern with the first, second or third quarter of 2020 financials was anything other than intentional. Second, the 2019 audit opinion was reissued in a 10-K filed with the SEC on April 27, 2021, more than ***five months after*** the Challenged Statements were made.

financial results for 4Q 2009 on August 19, 2010 does not render false the Company's statement about its internal controls as of December 31, 2008, which statement was made more than a year earlier on June 8, 2009." *Id.* Further, the Court held that the complaint "contains no facts explaining how the revisions to the 4Q 2009 financials revealed that [the company's] internal controls were not effective during any earlier period of time," and "alleges no other facts to support the assertion that [the Company's] internal controls were deficient" *Id.*; *see also id.* at *4 ("The Complaint's failure to allege any facts about any transaction prior to September 30, 2009 renders its claims as to statements regarding CSI's financials prior to that date legally insufficient.").

Here, RSM's resignation and its statements that it had identified "unusual transactions that ***occurred in the fourth quarter of 2020***" and believed that the Company's internal controls were not effective ***as of December 31, 2020*** are not and cannot be sufficient to plead that internal controls were insufficient in the third quarter of 2020, and that the Defendants knew this to be true at the time of the Challenged Statements. *See also Waterford Twp. Police & Fire Ret. Sys. v. Reg'l Mgmt. Corp.*, 2016 WL 1261135, at *11 (S.D.N.Y. Mar. 30, 2016) ("[T]here are no facts pleaded to support an inference that the Company knew, at time of the earlier disclosures…that its internal controls were insufficient.").[7]

That is not the only fatal defect in Plaintiff's pleading. The Challenged Statements "concern the conclusions of management. Accordingly, they are statements of opinion and plaintiffs must do more than simply allege that the conclusions were wrong. They must allege

---

[7] Even if Plaintiff had pled a material weakness, that alone is insufficient. "It is well established in the Second Circuit that Section 10(b) claims are not supported if the crux of the allegations is that a company was mismanaged; the allegations must allege 'manipulation or deception.'" *C.D.T.S. v. UBS AG*, 2013 WL 6576031, at *7 (S.D.N.Y. Dec. 13, 2013) (citation omitted), *aff'd sub nom. Westchester Teamsters Pension Fund v. UBS AG*, 604 F. App'x 5 (2d Cir. 2015).

adequately that defendants [] reached a conclusion different from the one stated, or that defendants reached no conclusion at all." *In re AmTrust Fin. Servs., Inc. Sec. Litig.*, 2019 WL 4257110, at *25 (S.D.N.Y. Sept. 9, 2019). Plaintiff must not only allege that such internal control disclosures "based on knowledge" were incorrect but also that "the speaker did not genuinely believe [them] when the statement[s] w[ere] made." *Lachman v. Revlon, Inc.*, 487 F. Supp. 3d 111, 135, 138 (E.D.N.Y. 2020); *see also Omnicare*, 575 U.S. at 186-87.

Plaintiff has failed to do so. Alleging that statements were false, merely based on a later disclosure, "adds no support to the argument that the challenged statement of opinion was not sincerely held at the time it was made." *In re AmTrust Fin. Servs.*, 2019 WL 4257110 at *26. "Because plaintiffs do not adequately allege that these statements of opinion were not believed when made, the statements are not actionable." *Lachman*, 487 F. Supp. 3d at 135; *see also Omnicare*, 575 U.S. at 186-87. "Having failed to plead that [Ebix]'s financial statements had any misstatements or omissions, or that Individual Defendants did not honestly hold their opinions, there is no basis for Plaintiffs to challenge the statements of [Ebix]'s CEO and CFO that, in their opinions, [Ebix]'s financial statements did not contain any misstatements or omissions." *Chapman v. Mueller Water Prods., Inc.*, 466 F. Supp. 3d 382, 410 (S.D.N.Y. 2020).

Plaintiff's attempt to infer the falsity of the Challenged Statements, and Defendants' knowledge of such falsity, based on RSM's subsequent resignation is a quintessential example of pleading "fraud by hindsight," which the Second Circuit has "firmly rejected." *Friedman v. Endo Int'l PLC*, 2018 WL 446189, at *6 (S.D.N.Y. Jan. 16, 2018) (citation and quotations omitted). At most, RSM's subsequent resignation reflects, in hindsight, that the auditor's concerns were greater than "Defendants had perhaps expected," but that is insufficient to sustain a claim of securities fraud. *See id.*; *see also In re Express Scripts Holdings Co. Sec. Litig.*, 773 F. App'x 9, 15 (2d Cir.

2019) ("Much of what [Plaintiff] alleges is 'fraud by hindsight,' but Defendants 'need not be clairvoyant.' Allegations, like these, 'that defendants should have anticipated future events and made certain disclosures earlier than they actually did do not suffice to make out a claim of securities fraud.'") (citation omitted); *In re Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d 367, 377 (S.D.N.Y. 2004), *aff'd sub nom. Albert Fadem Tr. v. Citigroup, Inc.*, 165 F. App'x 928 (2d Cir. 2006). The Complaint should be dismissed.

### B.   Plaintiff Fails To Allege Any Defect In Ebix's Internal Controls

Plaintiff cannot meet the pleading standard merely by saying that "there was, in fact, a material weakness in internal control over financial reporting." (AC ¶4; *see also* AC ¶¶122-23) Relying "solely on general assertions regarding the existence of deficient controls…fall[s] far short of satisfying the exacting pleading requirements of Rule 9(b) and the PSLRA." *Janbay*, 2012 WL 1080306, at *9 (dismissing Section 10(b) claim). "[T]he mere fact that [Ebix]'s internal controls failed to catch [a material weakness] does not demonstrate the falsity of [Ebix]'s statements that its controls were adequate." *N. Collier Fire Control & Rescue Dist. Firefighter Pension Plan & Plymouth Cnty. Ret. Ass'n v. MDC Partners, Inc.*, 2016 WL 5794774, at *16 (S.D.N.Y. Sept. 30, 2016). To meet the pleading standard, Plaintiff must allege "why or how" internal controls "were materially deficient at the time" of the Challenged Statements. *See id.* Plaintiff fails to do so.[8]

### 1.   Plaintiff fails to plead internal control deficiencies.

Plaintiff does not plead facts showing that Defendants failed, in fact, to conduct the evaluations described in the 10-Q; that Ebix's internal controls were not "designed" to provide

---

[8]   Plaintiff's reference to various public filing requirements and GAAP principles (*see* AC ¶¶68-73, 75-78, 90, 93, 100) adds no support to the claims. *See, e.g.*, *In re CIT Grp., Inc. Sec. Litig.*, 349 F. Supp. 2d 685, 688 n.3 (S.D.N.Y. 2004) (declining to separately address alleged GAAP violations that "are completely dependent upon the underlying statements at issue").

reasonable assurance regarding the reliability of financial reporting; that Ebix did not have any internal controls; or that Defendants had actually and specifically identified, but chose not to disclose, significant deficiencies or material weaknesses.  Indeed, Plaintiff alleges nothing about the design of the Company's internal control structure or processes at all, nor anything about the management or execution of those processes.  That defect is also fatal.  *See Janbay*, 2012 WL 1080306, at *9 ("The Complaint does not allege any facts explaining why or how [the company's] internal controls were materially deficient at the time [the company] made any of the challenged statements."); *see also Okla. Law Enforcement Ret. Sys. v. Telefonaktiebolaget LM Ericsson*, 2020 WL 127546, at *9 (S.D.N.Y. Jan. 10, 2020) (dismissing allegations that certifications were false and "controls must have been inadequate in light of the alleged accounting and reporting errors" because "Plaintiffs fail to allege any particularized facts 'pertaining to the Company's internal structure for financial controls'") (citation omitted); *City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*, 2011 WL 4357368, at *22 (S.D.N.Y. Sept. 19, 2011).  As in *Janbay*, Plaintiff has "failed to allege specific facts concerning the purportedly deficient internal controls, including how they were deficient, when and why" and the attempt to point to a later disclosure to contest that the Company's internal controls were not effective at an "earlier period of time" is insufficient. *See Janbay*, 2012 WL 1080306, at *8-9.

Similarly, Plaintiff nowhere explains why the Company's statement that it was "continually monitoring the impact of COVID-19 on the operating effectiveness of our internal control over financial reporting" (AC  ¶15), demonstrates that its disclosure that there were "no changes in our internal control over financial reporting" was false.  Much less that Defendants "were aware of a material weakness in internal controls."  *Woolgar*, 477 F. Supp. 3d at 229-30 (disclosures are not actionable absent "factual allegations supporting the inference that Defendants

knew about any material weakness in the Company's internal controls *prior* to this disclosure");
*see also In re Magnum*, 26 F. Supp. 3d at 295.

### 2. Plaintiff's laundry list of supposed evidence fails to allege with particularity an internal control deficiency.

Plaintiff says that Ebix suffered from a "'perfect storm' of adverse circumstances" that created a material weakness that was "concealed from investors," which included: (i) growth in EbixCash's gift and prepaid card business and the COVID-19 pandemic "causing people to avoid traditional in-person payment solutions and instead opting en masse for the digital payment solutions offered by EbixCash," (ii) "disruptions and inefficiencies" to Ebix's workforce as a result of the pandemic, (iii) regulations in India that "facilitated widespread growth in the digital payment space," (iv) additional EbixCash marketing efforts regarding gift and prepaid card products, and (v) the rise of digital fraud. (*See* AC ¶¶5, 121) None of this shows a material weakness known to the makers of the Challenged Statements at the time the Challenged Statements were made.

To start, all of this smacks of "fraud by hindsight" which, as explained above, is insufficient. *See supra* Section I.A. Next, Plaintiff fails to tie any of the listed "adverse circumstances" to any specific and identified "material weakness" or failure of Ebix's internal control. *See Menora Mivtachim Ins. Ltd. v. Int'l Flavors & Fragrances Inc.*, 2021 WL 1199035, at *18 (S.D.N.Y. Mar. 30, 2021) (concluding "statements vouching for the effectiveness of internal controls and audits over financial reporting are not actionable" where allegations "ha[ve] nothing to do with controls over financial reporting"). Instead, Plaintiff identifies a myriad of potential items that may have, or could have, impacted internal control due to the simultaneous growth of EbixCash, but "none of the problems plaintiffs identify specifically related to [Ebix's internal control over financial reporting]." *Lachman*, 487 F. Supp. 3d at 135. As a result, "defendants' purported awareness of underlying operational issues, even if established, would not imply their

15

knowledge that those issues had caused a material weakness in [Ebix's] ICFR, particularly given that not every deficiency in a company's financial controls amounts to a material weakness." *Id.*

Further, even assuming Plaintiff had alleged a material weakness in internal controls, Plaintiff fails to explain how Defendants Raina and Hamil knew or recklessly disregarded that weakness "in the context of the COVID-19 pandemic, skyrocketing growth in EbixCash occurring with a workforce of diminished capacity and an environment where Defendants knew '[m]alicious third parties' were committing fraud in the digital arena." (*See* AC ¶¶120-24) Plaintiff's allegations that Defendants knew or recklessly disregarded these circumstances do "not raise an actionable inference that Defendants knew that the SOX certifications were false" because "an equally plausible inference is that Defendants believed that any deficiencies were not so acute as to rise to the level of an internal control weakness." *Lefkowitz v. Synacor, Inc.*, 2019 WL 4053956, at *10 (S.D.N.Y. Aug. 28, 2019) (citing *Tellabs*, 551 U.S. at 323-24), *aff'd*, *Shreiber v. Synacor, Inc.*, 832 F. App'x 54 (2d Cir. 2020) (dismissing Section 10(b) claim despite allegations that "Defendants were aware that the Company was understaffed and lacked personnel in internal controls"); *Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Commerce*, 694 F. Supp. 2d 287, 300 (S.D.N.Y. 2010) ("Even assuming these events put Defendants on notice of the subprime credit crisis as early as May 2007, knowledge of a general economic trend does not equate to harboring a mental state to deceive, manipulate, or defraud.").

## II.  PLAINTIFF FAILS TO ALLEGE FACTS SUPPORTING A STRONG INFERENCE OF SCIENTER

Under the PSLRA, a plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," 15 U.S.C. § 78u-4(b)(2)(A), which is "a mental state embracing intent to deceive, manipulate, or defraud." *Tellabs, Inc. v. Makor Issues & Rights, LTD.*, 551 U.S. 308, 319 (2007) (citation omitted). Section 10(b) and Rule

10b-5 similarly "require that the defendant[s] **_must have intended 'to deceive, manipulate, or_** **_defraud_**.'" *Marcu*, 2020 WL 4016645, at \*6 (citation omitted) (emphasis added).  A plaintiff can establish the requisite strong inference of scienter by alleging either:  (1) the defendants had "the motive and opportunity to commit fraud," or (2) "strong circumstantial evidence of conscious misbehavior or recklessness." *ECA, Local 134*, 553 F.3d at 198-99.  Plaintiff does neither and does not plead an intent to deceive in connection with the Challenged Statements.[9]

### A.    Plaintiff Fails To Sufficiently Allege Motive Or Opportunity To Commit Fraud

To allege "motive and opportunity" to commit fraud, a plaintiff must allege "a concrete and personal benefit" to the individuals who allegedly carried out the fraud. *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001); *see also Marcu*, 2020 WL 4016645, at \*7.  Plaintiff makes no attempt to allege motive as to Defendant Hamil.  As to Defendant Raina, Plaintiff's sole allegations of motive are that: (i) he "was the sole beneficiary of a Bonus Plan which provides for the payment of annual cash incentive awards" based on Ebix's "achievement of specified performance goals" (AC ¶142(f)), and (ii) as "a more than 14% shareholder of Ebix," he "was likely to profit personally" from the "lucrative planned IPO of EbixCash" so Defendants "were motivated to assure the quick turn-around of the audit" by hiring K.G. Somani "only several weeks after RSM's resignation" (AC ¶142(g), (i)).  Neither allegation supports an inference of scienter.

First, "an allegation that defendants were motivated by a desire to maintain or increase executive compensation is insufficient because such a desire can be imputed to all corporate

---

[9]    For the reasons set forth herein, Plaintiff has failed to plead scienter as to the Individual Defendants, and accordingly, failed to plead any scienter "imputed to Ebix." (AC ¶141); *See City of N. Miami Beach Police Officers' & Firefighters' Ret. Plan v. Nat'l Gen. Holdings Corp.*, 2021 WL 212337, at \*11 (S.D.N.Y. Jan. 21, 2021) (holding plaintiffs failed to plead corporate scienter "because they have not proven that anyone 'whose intent could be imputed to the corporation acted with the requisite scienter'") (citation omitted).

officers." *Kalnit*, 264 F.3d at 140. Pursuant to applicable Second Circuit precedent, an alleged "desire for the corporation to appear profitable," without corresponding allegations that the defendant received a "concrete and personal benefit," is insufficient. *See id.* at 139 (plaintiff must also allege "defendants misrepresented corporate performance to inflate stock prices while they sold their own shares"); *Marcu*, 2020 WL 4016645, at *7 (same). Where, as here, a plaintiff does not allege that the defendant sold shares during the Class Period or otherwise actually "received a 'concrete and personal' benefit from the alleged scheme" to defraud investors based on the "perceived value" of the Company, Plaintiff fails to allege a cognizable motive. *Schaffer v. Horizon Pharma PLC*, 2018 WL 481883, at *11 (S.D.N.Y. Jan. 18, 2018) (citation omitted).

Second, the desire to complete a "planned IPO of EbixCash" is insufficient to allege motive. *See Janbay*, 2012 WL 1080306, at *10 (rejecting motive allegation that "defendants wanted to complete a secondary public offering"). Alleging that Raina "stood to benefit financially" from the potential IPO due to his stock ownership (*see* AC ¶142(g)) does not "point[] to any specific benefit that would inure to the defendants that would not be…beneficial to all shareholders, not just the defendants [] specifically." *Kalnit*, 264 F.3d at 143.

### B.    Plaintiff Fails To Sufficiently Allege Conscious Misbehavior Or Recklessness

Absent evidence of motive "the strength of the circumstantial allegations must be correspondingly greater." *ECA, Local 134*, 553 F.3d at 198-99 (citation omitted); *see also Kalnit*, 264 F.3d at 143. To plead a compelling inference of scienter through circumstantial evidence, Plaintiff must "set forth particularized factual allegations demonstrating that the defendant[s] acted either deliberately or with 'a state of mind approximating actual intent, and not merely a heightened form of negligence.'" *Menora*, 2021 WL 1199035, at *25 (citation omitted). To allege "conscious misbehavior," Plaintiff "must establish a defendant's actual knowledge." *Id.* Recklessness in the securities fraud context "must approximate 'actual intent.'" *In re Gen. Elec. Sec. Litig.*, 844 F.

App'x 385, 388-89 (2d Cir. 2021) (citation omitted).  As shown above, Plaintiff fails to establish any defendant had knowledge that the Challenged Statements were false when made.  *See supra* Section I.A.  As set forth below, each of Plaintiff's additional allegations are also insufficient.[10]

### 1.    CW allegations

Plaintiff's confidential witness allegations do not demonstrate that the Individual Defendants were aware of any specific information that contradicted the Challenged Statements. Neither CW identifies any "unusual transactions" or a "material weakness" in Ebix's internal controls over financial reporting – let alone specifically related to the gift or prepaid revenue transaction cycle – that were brought to the Individual Defendants' attention prior to the Challenged Statements.  *See In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 580 (S.D.N.Y. 2014) (rejecting CW allegations that "do not substitute for well-pleaded allegations of contemporaneous falsity – that the makers of the statements [] knew their statements were false or misleading *at the time they were made*") (emphasis in original), *aff'd*, 604 F. App'x 62 (2d Cir. 2015).  That is fatal.

Making matters worse for Plaintiff, CW1 is not demonstrated to have occupied a position, or had access to any information, showing that CW1 could know anything relevant about Ebix's internal controls – let alone what Raina and Hamil would have known.  *See In re Am. Express Co. Sec. Litig.*, 2008 WL 4501928, at *8 (S.D.N.Y. Sept. 26, 2008) (rejecting CW allegations that failed to demonstrate CW "had any contact with the Individual Defendants or would have knowledge of what they knew or should have known during the Class Period."), *aff'd*, *Slayton v. Am. Express Co.*, 604 F.3d 758 (2d Cir. 2010).  Plaintiff concedes that "CW2 did not have visibility

---

[10]    A plaintiff cannot "combine several insufficient allegations of scienter and, taken together, construct 'strong inference' of recklessness."  (*See* AC ¶¶142-43); *cf. Hutchinson v. Perez*, 2013 WL 1775374, at *4 (S.D.N.Y. Apr. 25, 2013) (citation omitted), *aff'd sub nom. Jones v. Perez*, 550 F. App'x 24 (2d Cir. 2013).

into Ebix's operations or finances in India." (AC ¶67)  Generalized allegations that CW2 "reported to" Hamil are "meaningless unless Plaintiff[] establish[es] what [Hamil] knew or should have known."  *In re Am. Express*, 2008 WL 4501928, at *7; *see also Wyche v. Advanced Drainage Sys., Inc.*, 2017 WL 971805, at *15 (S.D.N.Y. Mar. 10, 2017), *aff'd*, 710 F. App'x 471 (2d Cir. 2017).

Even if those defects are ignored, the statements attributed to CW1 and CW2 fail to salvage the claims.  According to CW1, "fellow employees described Ebix's CEO, Defendant Raina, as 'unethical' and an executive who 'mix[ed] his own personal interests in India with the company's.'"  (AC ¶65)  Yet, Plaintiff fails to explain who these "fellow employees are," when the statements were made, or how they "attest to the lack of internal control over the Company's financial reporting."  (*See* AC ¶65); *See In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 352 (S.D.N.Y. 2011) (rejecting CW allegations that were "either undated or pegged to an indefinite time period" because that omission "renders the task of matching CW allegations to contrary public statements all but impossible").  (*See* AC ¶65)

Plaintiff's allegations related to CW2 fare no better.  Plaintiff alleges that CW2:  (i) "had serious concerns about the Company's finances when RSM resigned in February 2021," (ii) told Plaintiff that "'[a]uditors just don't quit, unless there's fraud or something,'" (iii) told Plaintiff that Hamil was "'devastated'" over RSM's resignation (AC ¶66), and (iv) told Hamil *after* RSM resigned that "Ebix needed to have someone from the U.S. handling the testing of internal control" in India (AC ¶67).  These speculative and generalized allegations fail to demonstrate "specific instances in which Defendants received information that was contrary to their public declarations," as is required to establish that Defendants had "actionable data alerting [them] to the falsity of [their] statements."  *Plumbers & Steamfitters Local 773 Pension Fund*, 694 F. Supp. 2d at 299-300; *see also Local No. 38 Int'l Bhd. of Elec. Workers Pension Fund v. Am. Express Co.*, 724 F.

Supp. 2d 447, 461 (S.D.N.Y. 2010) (disregarding CW allegations that "do not establish what specific contradictory information the Individual Defendants received or when they received it"), *aff'd*, 430 F. App'x 63 (2d Cir. 2011); *see also In re Am. Express*, 2008 WL 4501928, at *7.

### 2. Positions at the Company

Plaintiff alleges that Raina's and Hamil's "positions with Ebix" and "power and authority to control the contents of Ebix's reports" to the public show that they knew or recklessly disregarded that the Challenged Statements were false. (AC ¶¶34,155) But "the argument that defendants must have known that alleged misstatements were false because they were high-ranking officers…has been repeatedly rejected by courts in this District." *N. Collier*, 2016 WL 5794774, at *22; *see also In re Diebold Nixdorf, Inc., Sec. Litig.*, 2021 WL 1226627, at *13 (S.D.N.Y. Mar. 30, 2021).

Plaintiff's allegations that Raina and Hamil had "actual knowledge of RSM's frustration and resulting conclusions" due to their "communication and interaction with the Audit Committee" fare no better. (*See* AC ¶¶109, 114, 142(d), 143(d)) Asserting that officers "due to their high-level positions in the Company, had access to adverse undisclosed financial information through internal corporate documents, meetings, and reports, without further facts or details will not suffice to create a strong inference of scienter.' Moreover, simply alleging that executive defendants are 'closely involved' in running their business is not enough to show that they had access to contrary information." *City of N. Miami*, 2021 WL 212337, at *10; *see also Maloney v. Ollie's Bargain Outlet Holdings, Inc.*, 2021 WL 517934, at *5 (S.D.N.Y. Feb. 10, 2021).

Nor is it enough to allege, in conclusory fashion, that Raina and Hamil "participated in the creation, development, monitoring and reporting" of Ebix's internal control or "had access to" management and "internal reports and other data." (*See, e.g.*, AC ¶¶142-143, 155) "'Where plaintiffs contend defendants had access to contrary facts, they *must specifically identify* the reports

or statements containing this information.'" *In re Rockwell Med., Inc. Sec. Litig.*, 2018 WL 1725553, at *13 (S.D.N.Y. Mar. 30, 2018) (emphasis added) (internal citations omitted); *see also In re Diebold*, 2021 WL 1226627, at *13. Yet, the Complaint "fails to reference a single internal [Ebix] document or confidential source that discredits Defendants' public statements." *In re Rockwell*, 2018 WL 1725553, at *13. "[W]ithout more to tie the Individual Defendants to specific information contradicting the substance of their statements, this allegation is insufficient to give rise to a strong inference of scienter." *Shemian v. Research in Motion Ltd.,* 2013 WL 1285779, at *18 (S.D.N.Y. Mar. 29, 2013), *aff'd*, 570 F. App'x 32 (2d Cir. 2014); *see also Inter-Local Pension Fund GCC/IBT v. Gen. Elec. Co.*, 445 F. App'x 368, 370 (2d Cir. 2011).

Plaintiff's attempt to impute scienter based on the Individual Defendants' signing of any public filings or Sarbanes-Oxley certifications is also futile. (*See, e.g.*, AC ¶¶4, 8-10, 27, 33, 122); *See Int'l Ass'n of Heat v. Int'l Bus. Machs. Corp.*, 205 F. Supp. 3d 527, 536 (S.D.N.Y. 2016). "Plaintiff offers nothing beyond conjecture to suggest that Individual Defendants knew –*at the time* they signed their certifications – of any misrepresentations in [Ebix]'s financial statements or deficiencies in the Company's internal controls." *In re Diebold*, 2021 WL 1226627, at *12 ("Hindsight, although 20/20, cannot be used to prove securities fraud").

### 3.    Growth in gift card business

Plaintiff says that Raina and Hamil had "actual knowledge of the structure and potential for weakness in internal control under the then-existing circumstances of astronomical growth in EbixCash and Ebix's focused marketing of the gift card and prepaid cards," and "knew or recklessly disregarded the then-existing circumstances which would produce a material weakness," such as the effect of COVID-19 on Ebix's staff in India, motivation to use digital payment systems, and "malicious third parties" committing fraud "in the digital arena." (AC ¶¶142(c),(e), 143(c),(e)) These conclusory assertions do not plead scienter.

22

First, Plaintiff fails to explain how Raina and Hamil "knew or recklessly disregarded" that EbixCash's "astronomical growth" in the third quarter of 2020 had "revealed a material weakness in internal control over financial reporting," and so the Challenged Statements were false when made, and Defendants *knew* they were false.  (AC ¶¶15, 142(e), 143(e))  The Complaint "lacks any particularized allegations to support an inference that Defendants were aware of any [internal control] problems," as it "fails to reference a single internal [Ebix] document or confidential source that discredits Defendants' public statements."  *In re Rockwell*, 2018 WL 1725553, at *13.  Noting that Raina and Hamil "had designed" the internal controls is insufficient to allege that Ebix's growth caused a material weakness known to them.  *See City of N. Miami*, 2021 WL 212337, at *10 ("[S]imply alleging that executive defendants are 'closely involved' in running their business is not enough to show that they had access to contrary information.") (citation omitted).

Second, each of the general market conditions – COVID-19, use of digital payment systems, and digital fraud – fail to "tie any [] specific report or information to the particular statements made," or identify specifically how the "then-existing circumstances" were "red flags" disregarded by Defendants at the time of the Challenged Statements.  *See C.D.T.S.*, 2013 WL 6576031, at *7 ("There are many reasons why each of the Individual Defendants could have made the certifications and statements that they did - most of which have nothing at all to do with fraud."); *Local No. 38*, 724 F. Supp. 2d at 461 ("[The] allegations do not establish what specific contradictory information the Individual Defendants received or when they received it.").

### 4.    History of accounting

Unable to make the particularized pleading required, Plaintiff retreats to a broad side accusation that Raina is a bad actor.  Plaintiff cites a few articles and a lawsuit, saying a "cogent inference of Raina's scienter arises from the context of Ebix's history of accounting improprieties and misleading investors."  (AC ¶¶142(h))  Not so.  First, *even if* it was true that Ebix has a "history

23

of accounting improprieties," Plaintiff must "put forward evidence of corresponding fraudulent intent, *separate and apart from* the accounting violations themselves." *Woolgar*, 477 F. Supp. 3d at 239 (citation omitted). Plaintiff fails to do so. Second, not one of the cited articles or reports discussing Ebix's supposed "accounting irregularities" and transparency identifies any finding of actual fraud against Defendants or an actual omission or misstatement in their disclosures. (*See* AC ¶¶55-63) Third, the cited lawsuit, *Yatra Online, Inc. v. Ebix, Inc., et al.*, C.A. No. 2020-0444-JRS (Del. Ch.), was recently dismissed by the Delaware Court of Chancery on the pleadings.

## 5.    RSM's resignation and the retention of K.G. Somani

RSM's resignation and the subsequent hiring of K.G. Somani to complete the audit are not bases to infer scienter. (AC ¶¶142(i)-(j), 143(f)-(g)) The timing – RSM resigned on February 15, 2021 due to issues that occurred *in the fourth quarter of 2020* – contradicts the notion that either Raina or Hamil knew on November 6, 2020, the date of the Challenged Statements related to the *third quarter of 2020*, that a material weakness existed and lied about it. An "inference of scienter must be more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Slayton*, 604 F.3d at 773 (citation omitted). Ebix promptly disclosed RSM's resignation, RSM's stated reasons, and related discussions. (*See* AC ¶¶12, 74, 80-82, 89, 115, 118; Exs. B-C) It did not hide these developments from the market. Plaintiff's CW allegation that Hamil was "devastated" by RSM's abrupt resignation further betrays an inference that Raina or Hamil anticipated the resignation or knew, and lied, about material weaknesses at the time of the Challenged Statements. *See id.* at 776 (defendant "was 'stunned'" by loss figure supported nonfraudulent inference).[11]

---

[11] Plaintiff's allegation that Defendants "knew" a purported "failure to provide the requested information was likely to cause RSM to take the serious step of resigning" is unsupported by fact allegations showing such knowledge. (AC ¶¶17, 86) Without pled facts that RSM "put

*(cont'd)*

The hiring of K.G. Somani and the firm's clean audit opinion are not bases to infer scienter either.  (AC ¶¶99-103, 142(i), 143(g))  Plaintiff pleads no actual facts to support the conclusory assertion that "Ebix turned to an auditor which would not look too closely at the significant unusual transactions, lack of sufficient appropriate audit evidence, and material weakness in internal control."  (AC ¶103)  The more compelling inference is that K.G. Somani, an India-based auditor, properly audited the Company, including its India-derived revenue, and issued a clean opinion because one was called for.  Plaintiff pleads no particularized facts demonstrating otherwise.

## III.    PLAINTIFF'S SECTION 20(a) CLAIMS SHOULD BE DISMISSED

To state a claim under Section 20(a), Plaintiff must allege: "(1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud."  *Ross v. Lloyds Banking Grp., PLC*, 2013 WL 5273067, at *5 (2d Cir. 2013).  As addressed above, Plaintiff has failed to sufficiently allege a primary violation of Section 10(b), and for the reasons set forth herein with respect to scienter, "none of the purported 'control persons' were 'culpable' participants in any alleged fraud."  *Janbay*, 2012 WL 1080306, at *17.  Therefore, the Section 20(a) claims should be dismissed.  *See id*.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint in its entirety with prejudice.

---

Defendants on notice" of its resignation prior to the Challenged Statements, "one cannot infer that it was a 'foregone conclusion'" that RSM would resign and that "adverse consequences would ensue."  *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 53 (2d Cir. 1995).

Dated: New York, New York
September 24, 2021

Respectfully submitted,

/s/ *Julie E. Cohen*
Julie E. Cohen
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Manhattan West
New York, New York  10001
Phone:  (212) 735-3000
Fax:  (212) 735-2000
julie.cohen@skadden.com

Paul J. Lockwood
Cliff C. Gardner
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Phone:  (302) 651-3000
Fax:  (302) 651-3001
paul.lockwood@skadden.com
cliff.gardner@skadden.com

*Attorneys for Defendants Ebix, Inc.,*
*Robin Raina and Steven M. Hamil*