UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RAHUL SARAF, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>EBIX, INC., ROBIN RAINA, and STEVEN M. HAMIL,<br><br>Defendants. | Case No.: 1:21-cv-01589 (JMF)<br><br>CLASS ACTION |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS'
MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT**

| | |
|---|---|
| SKADDEN, ARPS, SLATE,<br>  MEAGHER & FLOM LLP<br>Paul J. Lockwood<br>Cliff C. Gardner<br>One Rodney Square<br>920 N. King Street<br>Wilmington, Delaware 19801<br>Phone: (302) 651-3000 | SKADDEN, ARPS, SLATE,<br>  MEAGHER & FLOM LLP<br>Julie E. Cohen<br>One Manhattan West<br>New York, New York 10001-8602<br>Phone: (212) 735-3000<br><br>*Attorneys for Defendants Ebix, Inc., Robin Raina and Steven M. Hamil* |

i

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ................................................................................................... ii

**ARGUMENT** .............................................................................................................................. 1

**I.      PLAINTIFF HAS NOT ALLEGED A KNOWINGLY FALSE
         STATEMENT.** ................................................................................................................ 1

**II.     PLAINTIFF HAS NOT ALLEGED AN INTENT TO DECEIVE.** ............................... 6

**CONCLUSION** ........................................................................................................................ 10

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Cortina v. Anavex Life Scis. Corp.*,
    2016 WL 7480415 (S.D.N.Y. Dec. 29, 2016) ........................................................................ 9

*In re Tower Grp. Int'l, Ltd. Sec. Litig.*,
    2015 WL 5813393 (S.D.N.Y. Sept. 18, 2015) ..................................................................... 10

*Janbay v. Canadian Solar, Inc.*,
    2012 WL 1080306 (S.D.N.Y. Mar. 30, 2012) ....................................................................... 6

*Kalnit v. Eichler*,
    264 F.3d 131 (2d Cir. 2001) ................................................................................................. 7

*Marcu v. Cheetah Mobile Inc.*,
    2020 WL 4016645 (S.D.N.Y. July 16, 2020) ....................................................................... 9

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
    575 U.S. 175 (2015) .............................................................................................................. 6

*Thomas v. Shiloh Indus., Inc.*,
    2017 WL 1102664 (S.D.N.Y. Mar. 23, 2017) ....................................................................... 9

**ARGUMENT**

**I.**   **PLAINTIFF HAS NOT ALLEGED A KNOWINGLY FALSE STATEMENT.**

The Opening Brief showed that Plaintiff's keystone allegation is insufficient to plead a securities fraud claim under controlling law.[1] (OB 7-12) That keystone allegation is RSM's February 15, 2021 resignation and accompanying statements that it (i) identified "unusual transactions that *occurred in the fourth quarter of 2020*" and (ii) believed that internal controls were not effective *as of December 31, 2020*. (SAC ¶128) The Complaint fails to plead any disclosure to Defendants related to "unusual transactions that occurred in the fourth quarter" of 2020, before this February 15, 2021 disclosure. It also fails to plead that any disclosure related to "unusual transactions" or control deficiencies in the third quarter of 2020 was ever made to anyone. As a result, Plaintiff fails to plead that internal controls were insufficient during the *third quarter of 2020*, which ended on September 30, 2020, or that Defendants knew about such a deficiency and intentionally lied about it on November 9, 2020 when the Challenged Statements were made in a 10-Q. (OB 1-2, 7-12) For this reason, the Complaint should be dismissed.

The Opposition does not dispute the absence of pled facts showing an actual internal control deficiency during the *third quarter* of 2020, about which the Challenged Statements related. Nor does it dispute the absence of a disclosure to Defendants related to control deficiencies prior to February 15, 2021. Instead, Plaintiff merely points to RSM's February 15, 2021 resignation and statements. (*See* Opp. 13 n.7) From there, Plaintiff asks the Court to *infer* the existence of "unusual transactions" during the third quarter of 2020; *infer* an internal control deficiency existed in the third quarter of 2020; *infer* Defendants knew all of this by November 9,

---

[1]   Capitalized terms are defined in Defendants' Opening Brief. (ECF No. 65 ("OB"))

2020 when the Challenged Statements were made, and *infer* they intentionally lied about it.  (Opp. 4, 13, 15)  The law does not permit such inferences.  (*See* OB 7-12 (citing *Woolgar* and *Janbay*))

In the face of contrary authority, Plaintiff says that these extreme inferences are reasonable because Ebix's 2020 10-K stated that there "were no changes in our internal control over financial reporting identified in management's evaluation during the year ended December 31, 2020 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting."  (Opp. 3)  According to Plaintiff, "[b]ecause there were no changes in internal control during 2020," the Court should infer that the "unusual transactions that occurred in the fourth quarter of 2020," causing RSM to believe a material weakness existed as of December 31, 2020, must have also existed during the third quarter of 2020, and Defendants knew about it and lied.  (Opp. 3-4, 13)  Plaintiff's cited authority does not support that inference and the absence of changes in internal controls does not authorize pleading "fraud by hindsight."  (OB 12)

Plaintiff says that in *Dobina*, the Court inferred a company's internal controls for income taxes were not effective throughout a class period of 2007 – 2011 based on (i) a statement that such controls were not effective "as of December 31, 2010" and (ii) "the Company's attestations through the class period that its internal controls had not changed."  (Opp. 14)  But that is not a complete and honest recitation of the facts upon which the inference in *Dobina* rested.  Plaintiff uses an ellipsis to omit from his quotes that the *Dobina* Court rested the inference on the company's disclosure, made in connection with a restatement of its financials for 2007-2010, that "the $500 million tax expense understatement persisted from 2007-2010."  909 F. Supp. 3d at 244 ("in light of the company's attestations through the class period that its internal controls had not changed ***and* the fact that the $500 million tax expense understatement persisted from 2007-2010**, one reasonably may infer" (emphasis showing language omitted by Plaintiff)).  Here, unlike in *Dobina*,

2

there is no similar alleged persistent problem existing during the third quarter of 2020. The "unusual transactions" identified by RSM are only alleged to have "occurred in the fourth quarter of 2020." (SAC ¶128) Moreover, no auditor – including RSM – is alleged to have ever connected those "unusual transactions" to the third quarter of 2020; everyone agrees that Ebix subsequently received a clean, unqualified audit opinion for 2020; and Ebix has not restated its financials.

This case is nothing like *Dobina*. Rather than allege a persistent, unchanging problem as in *Dobina*, Plaintiff's own allegations betray an inference of known, persistent internal control deficiencies. Plaintiff says that during 2020, the India gift card business experienced "astronomical growth." (Opp. 2) He says that as a result of that growth, RSM eventually identified "unusual transactions that occurred in the fourth quarter of 2020," causing RSM to believe internal controls were not effective ***as of December 31, 2020***. (Opp. 3-4) In other words, he alleges that there came a point in time that growth led to an internal control deficiency. The Complaint expressly alleges that point in time was the fourth quarter of 2020. (SAC ¶128) Inferring that the same problem persisted throughout 2020 would be fundamentally inconsistent with the Complaint.

Knowing full well that the absence of any identified unusual transactions or material weaknesses in the third quarter is fatal to his claims, Plaintiff points to RSM's statement that further investigation "might" materially "impact the fairness or reliability of the financial statements." (Opp. 15-16) He also points to RSM's statement that it "cannot conclude on other control deficiencies that may rise to the level of a material weakness." (Opp. 16) None of this changes the absence of any identified unusual transactions or material weaknesses in the third quarter. Moreover, any inference of *possible*, but never identified, problems is foreclosed by: (i) the allegation that auditing standards required Ebix's replacement auditor to discuss the audit issues with RSM (Opp. 10-11); (ii) RSM was, in fact, "authorized to respond fully to the inquiries

of the successor independent registered accounting firm" (OB 5; *see also* SAC ¶113); (iii) the allegation that the successor firm (K.G. Somani) was located in India, the location of the "unusual transactions that occurred in the fourth quarter of 2020" (Opp. 10); (iv) K.G. Somani subsequently issued a clean unqualified audit opinion for 2020 (Opp. 11); (v) Ebix has not restated its financials.[2]

S*BAV, LP* is even less helpful to Plaintiff. For starters, it is not a case from a court in the Second Circuit and it is not a securities fraud case under Section 10(b) or Rule 10b-5. Although the Kentucky blue sky law at issue was subject to Rule 9(b), the court in *SBAV* "appl[ied] Rule 9(b)'s specificity requirements less stringently" in reliance upon another case adjudicating state law claims. Next, it is fundamentally distinguishable from this case for the same reason as *Dobina*. In *SBAV*, the court's inference that a bank's internal controls were inadequate during 2009 and 2010 rested on more than (i) a disclosure that internal controls were not effective as of December 31, 2011, and (ii) the absence of an "indication that the 2011 controls were less rigorous than those that existed in 2009 and 2010" as Plaintiff suggests. (Opp. at 14 (quoting *SBAV*, 2014 WL 1257018, at *6 (W.D. Ky. Mar. 26, 2014))) To the contrary, the inference rested on the persistent allegations of unsound banking practices and regulatory violations made by two governmental agencies, the FDIC and the Kentucky Department of Financial Institutions. 2014 WL 1257018 at *2. The court explained that those two agencies had entered into a Memorandum of Understanding with the bank in early 2010 and issued a Notice of Charges and of Hearing describing those alleged unsound practices and violations in early 2011. *Id.* at *1-2. As explained above, there is no similar alleged persistent problem here and the actual allegations of the Complaint foreclose such an inference. The Opening Brief pointed out that the plaintiff in *Woolgar* also alleged that there had

---

[2] Plaintiff's only response to any of this is to attack K.G. Somani's credibility (Opp. 23), which is insufficient (*see infra*).

been "no change" in the company's internal controls. (OB 9)  Yet the court dismissed the complaint because an admission that there was a material weakness as of September 30, 2019, was simply not enough to infer a material weakness in fact existed between March 14, 2018 and April 29, 2019. (OB 9)  RSM's assertion of "unusual transactions that ***occurred in the fourth quarter of 2020***" and the absence of alleged "unusual transactions" that occurred in the third quarter of 2020 make the Complaint subject to dismissal just like in *Woolgar* and *Janbay*.³  (OB 8-10)

Next, the Opening Brief explained that because the Challenged Statements concern the conclusions of management, they are statements of opinion and Plaintiff must not only adequately allege that the Challenged Statements were incorrect but also that "the speaker did not genuinely believe [them] when the statement[s] w[ere] made" as required by *Omnicare*.  (OB 11, 8 (citing *In re Am Trust*))  Although the Opposition says this is not true (Opp. 18), it cites no authority contrary to *In re AmTrust* which clearly so holds.  And Plaintiff offers no distinction of *In re AmTrust*.

Instead, Plaintiff argues that "[a] plaintiff can plead a claim adequately based on a statement of opinion about internal control if he alleges facts sufficient to 'permit a conclusion that [the defendant] either did not in fact hold that opinion or that it had no reasonable basis for it,'" and says that Defendants here "lacked a reasonable basis for assuring investors that internal control was effective." (Opp. 17-18 (citation omitted))  That conclusory assertion, however, falls far short of *Omnicare*'s requirement that a plaintiff must identify "***particular (and) material facts*** going to

---

³ Plaintiff makes no serious attempt to distinguish either *Woolgar* or *Janbay* in the Opposition. In a short footnote, Plaintiff says that "the company's auditor could not identify a material weakness during the class period" in *Woolgar*, and there were "no facts to show that a revision of financial results means that there was an earlier weakness" in *Janbay*. (Opp. 15 n.8)  But those are not distinctions from this case.  Just as in *Woolgar* and *Janbay*, no auditor identified a material weakness or problem at the time of the Challenged Statements.  Moreover, Ebix has not restated its financials and has received a clean, unqualified audit opinion for 2020.

the basis for the [speaker's] opinion – facts about the inquiry the [speaker] did or did not conduct or the knowledge it did or did not have – whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context." *Omnicare*, 575 U.S. at 186 (emphasis added). The Opposition points to no such pled facts here and there are none.

Finally, the Opening Brief explained that a plaintiff must do more than assert that there was a material weakness in internal controls, and must allege "why or how" internal controls "were materially deficient at the time" of the Challenged Statements. The Opening Brief explained that Plaintiff fails to do so. (OB 12-15) The Opposition does not dispute that this standard applies. And it fails to point to any fact allegations in the Complaint that would meet this standard. Merely asserting that management failed "to design or implement the necessary procedures and controls" is not enough to meet the standard. *See Janbay v. Canadian Solar, Inc.*, 2012 WL 1080306, at *8-9 (S.D.N.Y. Mar. 30, 2012) (plaintiff "failed to allege specific facts concerning the purportedly deficient internal controls, including how they were deficient, when and why," and pointing to a later disclosure to say they were ineffective was insufficient). Dismissal is required. (OB 12-15)

## II. PLAINTIFF HAS NOT ALLEGED AN INTENT TO DECEIVE.

The Opening Brief explained that even if Plaintiff had adequately pled that the Challenged Statements were false (and he has not), he nevertheless fails to plead particularized facts showing that Defendants intended to deceive, manipulate or defraud, as required. (OB at 15-16) The Opposition fails to point to sufficient pled facts meeting the Second Circuit's standard for scienter. For starters, the Opposition does not dispute that the Complaint alleges no motive as to Hamil. (OB 16) As to Raina, Plaintiff says he sought to benefit from Ebix's Bonus Plan and to complete the "long-touted and imminent IPO of EbixCash" from which "he would profit handsomely and directly as a more than 14% shareholder of Ebix." (Opp. 24) However, the Opening Brief already

explained that where, as here, a plaintiff fails to allege that the defendant sold shares during the Class Period or otherwise actually "received a 'concrete and personal' benefit from the alleged scheme" to defraud investors based on the "perceived value" of the Company, Plaintiff fails to allege a cognizable motive.  (OB 17)  The Complaint does not allege any actual "profit" to Raina from the alleged scheme – it does not allege that he sold shares during the Class Period, stood to benefit uniquely from an EbixCash IPO, or that the EbixCash IPO was even completed.  (OB 17) The Opposition also ignores the controlling authority cited in the Opening Brief.

Plaintiff's cited authority actually supports Defendants' position.  In *City of Roseville*, the plaintiffs attempted to allege motive and opportunity based on the defendants' insider sales in connection with an IPO.  814 F. Supp. 2d 395 (S.D.N.Y. 2011).  In analyzing the sales, the court explained that "[a] complaint that seeks to base scienter on a corporate insider's sale of his or her own stock must show 'unusual' insider sales." *Id.* at 420.  Because the defendants sold more than 80% of their holdings in the IPO, the court concluded "such sales could clearly be characterized as unusual insider trading activity during the class period," and found sufficient motive alleged to establish scienter.  *Id.* at 421-22 (citations omitted).  No similar facts are alleged here.

In *Omaha Police & Fire*, Plaintiff's only other authority involving an IPO, the court dismissed the plaintiffs' 10b-5 claim, refusing to find motive and opportunity based on their allegations that the corporate insider defendants sold nearly half of their stock in a public offering. 450 F. Supp. 3d 379, 419 (S.D.N.Y. 2020).  While acknowledging that "Second Circuit precedent forecloses the creation or application of a categorical rule," the court explained that "the fact that the Individual Defendants sold only in public offerings cuts against an inference of scienter, because it suggests a motive that is 'generally possessed by most corporate directors and officers.'" *Id.* (citing *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001)).  Accordingly, Plaintiff's failure to

plead that Raina engaged in any insider sales (let alone "unusual" insider sales), or otherwise stood to receive a benefit that would not be beneficial to all shareholders, requires dismissal. (OB 17)

The Opening Brief, explained that where, as here, there are no sufficient motive allegations, "the strength of the circumstantial allegations must be correspondingly greater." (OB 17) The Opening Brief also explained that Plaintiff's supposed evidence of conscious misbehavior or recklessness falls far short of the Second Circuit's exacting standards. (OB 17-25) The Opposition relies on just a few supposed examples of circumstantial evidence discussed in the Opening Brief.

First, Plaintiff says a "failure to maintain sufficient internal controls" or "ignor[ing] red flags regarding internal accounting controls" are indicative of scienter (Opp. 17), but alleges no red flags or facts similar to those in his cited authority. For example, in *Veeco*, defendants actively instructed employees to violate accounting rules, and further cut accounting staff by 75%, which "fostered an environment that permitted defendants to conceal accounting improprieties and false financial reporting." 235 F.R.D. 220, 232 (S.D.N.Y. 2006). Such extreme facts are absent here.

Second, Plaintiff says that Raina's and Hamil's "designing and monitoring" of internal control means that EbixCash and the India gift card business were their "principal focus" during the third quarter. (Opp. 20) However, the Opening Brief showed that where Plaintiff contends that Defendants had "access to contrary facts," Plaintiff must "specifically identify the reports or statements containing this information." (OB 22) Plaintiff does not do so.

Third, Plaintiff says that Raina's and Hamil's knowledge of the "astronomical, unprecedented growth" of EbixCash, and the India gift card business during COVID-19 supports an inference of scienter. (Opp. 21) The Opening Brief explained how Plaintiff's generic allegations about "then-existing circumstances" surrounding that "astronomical growth" are not sufficient to plead the Challenged Statements were false and known to be false when made. (OB

22-24)  The Opening Brief highlighted the lack of any particularized allegations to "establish what specific contradictory information the Individual Defendants received or when they received it." (OB 20)  Rather than pointing to such "specific contradictory information," the Opposition merely repeats the same conclusory allegations, shown to be insufficient in the Opening Brief.  (Opp. 18-19; OB 22-24)  Plaintiff also repeats the conclusory assertion that Raina and Hamil "knew" that Ebix had a "broken" accounting system in India because Ebix's businesses have different accounting systems.  (Opp. 7-8, 18)  The Opening Brief demonstrated Plaintiff's failure to connect the fact that Ebix has separate accounting systems to a known material weakness in Q3.  (OB 14)  The Opposition ignores Defendants' cited authority, which rejected these same allegations.  (*Id.*)

Fourth, Plaintiff suggests, for the first time, that the India gift card business is a "core operation" of Ebix, and so Plaintiff is entitled to an inference of scienter based upon Raina's and Hamil's alleged knowledge of "EbixCash's core Indian gift card business."  (Opp. 21)  This argument is unpersuasive for at least two reasons.  First, "it is far from clear that the core operations doctrine remains valid in light of the PSLRA." *Marcu v. Cheetah Mobile Inc.*, 2020 WL 4016645, at *8 (S.D.N.Y. July 16, 2020); *see also Cortina v. Anavex Life Scis. Corp.*, 2016 WL 7480415, at *7 (S.D.N.Y. Dec. 29, 2016).  Second, the doctrine requires the operation in question to "constitute nearly all of a company's business before finding scienter.'" *Thomas v. Shiloh Indus., Inc.*, 2017 WL 1102664, at *4 (S.D.N.Y. Mar. 23, 2017) (rejecting doctrine as to "crown jewel").  Plaintiff does not allege that the India gift card business constitutes "nearly all" of Ebix's business.

Fifth, Plaintiff argues that a company's "disagreement with auditors regarding internal control, coupled with its failure to remediate internal control weaknesses" can give rise to scienter.  (Opp. 22)  Yet, the Opening Brief demonstrated that K.G. Somani's issuance of a clean, unqualified audit opinion refutes an inference of scienter.  (OB at 24-25)  In response, Plaintiff

9

levies conclusory and baseless attacks on K.G. Somani. (Opp. 10, 23) But accusations that Defendants "effectively buried the 3Q20 material weakness by retaining K.G. Somani, an India-based accounting firm," and that "Somani is an Indian firm with far less experience with US GAAP and fewer resources," is a "far less qualified auditor," or was either "willing to look the other way" or "did not have the capacity and time to identify" a material weakness are not supported by specific facts and smack of xenophobia. (*Id.*) Tellingly, Plaintiff does not allege "facts to show that '[t]he accounting practices were so deficient that the audit amounted to no audit at all, or an egregious refusal to see the obvious, or to investigate the doubtful'" as would be necessary to sustain a securities fraud claim based on auditor misconduct. *In re Tower Grp. Int'l, Ltd. Sec. Litig.*, 2015 WL 5813393, at *5 (S.D.N.Y. Sept. 18, 2015).[4]

Finally, Plaintiff merely argues that the Court generally may consider information provided by the CWs (Opp. 19), but makes no attempt to address the deficiencies in the CW's allegations demonstrated in the Opening Brief.[5] (OB 18-21)

## CONCLUSION

The Court was clear, prior to the filing of the Second Amended Complaint, that Plaintiff "will not be given any further opportunity to amend the complaint to address issues raised by the motion to dismiss." (ECF No. 61) As a result, Defendants respectfully request that the Court dismiss the SAC in its entirety with prejudice.

---

[4] None of Plaintiff's remaining cited authority applies; Ebix has not restated earnings and instead received a clean audit opinion after RSM resigned, unlike in *Top Tankers*, 528 F. Supp. 2d at 415-16 (restated financials; auditor disagreed with accounting practices); *Atlas Air*, 324 F. Supp. 2d at 489-91 ("dramatic" restatement); *Akorn*, 240 F. Supp. 3d at 806, 810 (restated financials; three auditors concluded absence of effective controls); *Norfolk Cnty.*, 2009 WL 2386156, at *8 (restated financials; scienter allegations included SEC investigation); *Batwin*, 2008 WL 2676364, at *13 (restated financials; persistent improper accounting practices).

[5] As set forth above and in the Opening Brief, Plaintiff fails to allege a Section 20(a) claim.

Dated: New York, New York
November 19, 2021

Respectfully submitted,

/s/ *Julie E. Cohen*
Julie E. Cohen
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
One Manhattan West
New York, New York  10001-8602
Phone:  (212) 735-3000
Fax:  (212) 735-2000
julie.cohen@skadden.com

Paul J. Lockwood
Cliff C. Gardner
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Phone:  (302) 651-3000
Fax:  (302) 651-3001
paul.lockwood@skadden.com
cliff.gardner@skadden.com

*Attorneys for Defendants Ebix, Inc., Robin Raina and Steven M. Hamil*